IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:17cr493 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| vs. | ) | |
| | ) | DEFENDANT JESSE GULLEY 'S |
| JESSE GULLEY, | ) | MOTION TO SUPPRESS |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Jesse Gulley ("Gulley" or "Defendant"), by and through undersigned counsel and pursuant to Rules 12 and 41 of the Federal Rules of Criminal Procedure and the Fourth Amendment to the U.S. Constitution, hereby respectfully moves this Honorable Court for an order suppressing illegally-obtained evidence.

Specifically, Gulley seeks the suppression of all physical evidence obtained, pursuant to a search warrant on July 25, 2017, of a residence in which he was an overnight guest.  Support for this motion is contained in the attached Brief.

                                          Respectfully submitted,

                                          */s/ Fernando O. Mack*
                                          FERNANDO O. MACK
                                          Reg. No.: 0062937
                                          1220 W. 6th St., Ste. 203
                                          Cleveland, OH 44113
                                          (216) 256-9610
                                          (216) 575-7664 (Fax)
                                          losmacks@msn.com
                                          *Attorney for Defendant*

**BRIEF IN SUPPORT OF MOTION TO SUPPRESS**

Gulley asks this Court to suppress all evidence collected by law enforcement during the execution of a search warrant at a residence owned by Ikasha Clark, on the basis that he was an overnight guest, and the search was conducted pursuant to a warrant that was based on an affidavit that was insufficient to establish probable cause.  Additionally, the officers who carried out the search did not act in good faith reliance on the defective warrant.

I. **Alleged Facts**

On July 24, 2017, Gulley spent the night at Clark's residence.  The following day, U.S. Marshals arrived, looking to arrest a fugitive.  The person they sought did not live at Clark's house, but they remained and attempted to speak with Gulley.  During the conversation, they attempted to look inside of Clark's residence, despite not receiving consent from either Gulley or Clark.  According to the government, the agents viewed what they believed to be ammunition inside of the house

Agents subsequently sought and obtained a search warrant for Clark's residence, based on the fact that Gulley (a convicted felon) was present in the house along with ammunition.[1]  During the search, they purportedly seized several firearms and suspected narcotics.

II. **Law & Argument**

Gulley seeks suppression of the physical evidence obtained by law enforcement during the search of Clark's home, on the grounds that he was an overnight guest (and thus has standing) and the warrant was unsupported by probable cause.

---

[1]  The submitted affidavit, as outlined below, also indicated that there was an ongoing investigation, during which agents believed they had information linking Gulley to other criminal activity.

2

A. <u>Gulley Has Standing</u>

In *Minnesota* v. *Olson,* 495 U.S. 91 (1990), the U.S. Supreme Court found that overnight guests enjoy the same expectation of privacy that the Fourth Amendment guarantees to homeowners. There, the Court said –

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend [***] From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.

*Olson* at 98-99.

Here, Gulley was the very definition of an overnight guest. He stayed at Clark's residence the night of July 24th, and remained there through the 25th when agents obtained and executed the search warrant. As a result, he had a legitimate expectation of privacy in Clark's house, and therefore has standing to contest its search and the seizure of the items therein.

B. <u>The Affidavit was Insufficient to Establish Probable Cause</u>

Whether an affidavit submitted in support of a search warrant contains sufficient probable cause to support the decision of the judge to issue the warrant is looked at under the "totality-of-the-circumstances" test set out by the U.S. Supreme Court in *Illinois v. Gates* (1983), 462 U.S. 213. Probable cause is "a fair probability that contraband or evidence of a crime will be found."

*Id.* at 238.  In determining whether an affidavit properly establishes probable cause, a court must look only to the four corners of the document itself.  *Franks v. Delaware*, 438 U.S. 154 (1978).  Here, the affidavit was lacking; consequently, no probable cause existed, the warrant to search Clark's residence was improperly issued, and any evidence found during the search must be excluded from these proceedings.

      1.    *An Informant's Tip With No Corroboration is Not Enough*

According to Volpe's affidavit, the grounds for the issuance of a search warrant for Clark's house were as follows –

- Informants told agents Gulley was at the house at some point with drugs and guns;
- Informants completed controlled buys somewhere and at some point from Gulley;
- Gulley has prior felony convictions;
- Agents saw ammunition at Clark's house; and
- Clark told agents there were multiple guns in the house.

(Volpe Aff. Pp. 2-3).  The affidavit does not specify when (during a nearly two-year investigation) the informant(s) saw Gulley at the house with guns or drugs.  It does not specify when or where Gulley sold drugs to informants.  There is no indication that the informant(s) provided reliable information in the past that led to drug-related prosecutions.  There is no indication that agents undertook investigative efforts to corroborate the informants' tips specifically related to what illegal activity supposedly occurred at Clark's house.  And the affidavit does not provide a basis to believe that Clark was in any way prohibited by law from owning firearms.

As the Sixth Circuit Court of Appeals has noted, "the affidavit presented must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant."  *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir.1996).  *Weaver* is instructive.  There, police received a tip from a confidential informant that marijuana

4

cultivation and sales were occurring at Weaver's home.  Police took no further investigative steps and obtained a warrant.  During the execution of the warrant, several firearms were found.  On appeal, Weaver argued that the affidavit was insufficient to support a finding of probable cause.  The Sixth Circuit Court agreed, finding that a "review of this affidavit reveals a paucity of particularized facts indicating that a search of the Weaver residence 'would uncover evidence of wrong-doing.'" *Id*. at 1379 (quoting *Gates*, *supra* at 236).

"*Evidence of wrong-doing*" is the key here.  As noted above, the affidavit does not provide any of the facts that an objective observer would look for in order to determine that criminal activity was occurring at Clark's residence.  No one saw drug transactions being conducted on or near Clark's property.  No one saw her possessing drugs or suspected illegal materials.  There is no connection between her property and illegal activity.  It would be one thing if there was had been a controlled buy conducted by someone residing at the house, or a statement made by the affiant that the activity was observed at some point in time close to when the execution of the warrant occurred.  But that is not the case here.  Instead, we are presented with bare conclusions of the investigating agent that Gulley used Clark's house "to store his illegal firearms" or "to store his illegal narcotics..."  (Volpe Aff. p. 3).  As the Court noted in *Weaver*, an affidavit cannot be merely a "mere ratification of the bare conclusion of others."  *Id*. at 1377 (citing *Gates*, *supra* at 239).  It follows that Volpe's affidavit is insufficient to establish probable cause to believe that illegal activity was occurring in July of 2017 on Clark's property.

    2.    *Staleness*

Even if this Court finds that a tip from an informant that Gulley had drugs or guns at Clark's residence was sufficient to establish probable cause, the problem is that there is no reliable timeframe based on the facts laid out in the affidavit.  We know that the investigation

began in January of 2016 – nearly two years ago. We also know that at some unknown point during that investigation that an unnamed person claimed that he/she saw Gulley at Clark's house with drugs and/or guns.

The Second Circuit Court of Appeal has found that –

> [w]hile there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past.

*U.S. v. Wagner*, 989 F. 2d 69, 75. See also, *U.S. v. Grubbs*, 547 U.S. 90, fn. 2.

This case is a perfect example of the facts offered in support of an affidavit not being "sufficiently close in time to the issuance of the warrant and the subsequent search conducted to that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *Grubbs, supra* (quoting *Sgro* v. *United States,* 287 U.S. 206, 210-211 (1932)). The affiant here did not, and cannot, say when the purported suspicious activity at Clark's home occurred. It may have been in February of 2016. It may have been in June of 2017. Either way, it was not sufficiently close in time to when Volpe sought the search warrant (July 2017) to say that probable cause existed to believe that some evidence of criminal activity would be found there.

      C.    The "Good Faith Exception" Does Not Apply

The government may argue that even if the warrant was issued in the absence of probable cause, the executing officers acted in good-faith reliance on it, thereby triggering an exception to the exclusionary rule. For the reasons which follow, that argument must be rejected.

The "good faith" exception to the exclusionary rule, as described by the U.S. Supreme Court, allows the admission of evidence collected in violation of the Fourth Amendment if law

enforcement acted in good faith in reliance on a defective warrant.  See *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Here, the agents must have known – as would any reasonable officer – that they did not have sufficient probable cause to search Clark's home.  Consequently, the good faith exception does not apply, and the evidence obtained during the execution of the improperly-issued warrant must be excluded.

The standard relative to the good-faith exception is "whether the 'reliance on the validity of the warrant was objectively reasonable, that is, 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'"  *Weaver*, *supra* at 1380 (quoting *U.S. v. Leake*, 998 F. 2d 1359).  This Court must therefore decide whether the executing agents reasonably believed that there was probable cause to search Clark's house for evidence of criminal activity.  Again, *Weaver* is instructive; there, the Court noted that –

> Viewed objectively, [the affiant] possessed some information from a previously reliable informant regarding possible criminal activities but 1) possessed no prior personal knowledge of any unlawful activity by this suspect, or at the suspect residence, other than an old conviction on completely unrelated circumstances; 2) possessed no present personal knowledge of any connection between this suspect and marijuana possession or distribution; 3) had not personally seen any marijuana at the suspect residence nor conducted any visual reconnaissance of the property to determine whether marijuana was likely to be present on the property; and 4) possessed only third-party hearsay information about a possible marijuana grow operation on the property. With little first-hand information and no personal observations, McCullough should have realized that he needed to do more independent investigative work to show a fair probability that this suspect was either possessing, distributing, or growing marijuana.

*Id*.  Similarly, here Volpe (1) had no personal knowledge of unlawful activity by Clark, (2) had no *present* personal knowledge of any connection between Clark or her property to drug or illegal gun activity, (3) did not see any illegal activity at the residence or conduct any visual

7

reconnaissance to confirm his suspicions, and (4) had only third-party hearsay information about possible criminal activity at the property. Like the *Weaver* court found, here Volpe "should have realized he needed to do more independent investigative work..."

Just as the officer in *Weaver* should have, here the affiant needed to seek further corroboration to show probable cause. He did not, and it was evident to any reasonable officer that probable cause to search Clark's house did not exist.

### III. Conclusion

Evidence that is obtained during a search or seizure that violates the Fourth Amendment must be excluded from criminal proceedings. *Wong Sun v. United States*, 371 U.S. 471; *Mapp v. Ohio*, 367 U.S. 643. Here, the affidavit provided in support of the search warrant for Clark's house was insufficient to establish probable cause of criminal activity. Additionally, the officers who executed the warrant did not act in good faith reliance upon the warrant. As a result, all evidence obtained during the execution of the warrant must be suppressed. Now, based on the preceding authorities and reasons, Defendant respectfully requests that this Court grant this motion.

Respectfully submitted,

*/s/ Fernando O. Mack*
FERNANDO O. MACK
Reg. No.: 0062937
1220 W. 6th St., Ste. 203
Cleveland, OH 44113
(216) 256-9610
(216) 575-7664 (Fax)
losmacks@msn.com
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

A copy of this motion was filed via the Court's Electronic Filing System on January 6, 2018; notice will be provided to all parties by operation of the system.

*/s/ Fernando O. Mack* ___
*FERNANDO O. MACK*