```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                 :
UNITED STATES OF AMERICA,                        :    CASE NO. 5:17-CR-493
                                                 :
        Plaintiff,                               :
                                                 :
v.                                               :    OPINION & ORDER
                                                 :    [Resolving Docs. No. 23, 24, 26]
JESSE GULLEY and IKASHA CLARK,                   :
                                                 :
        Defendants.                              :
                                                 :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants Jesse Gulley and Ikasha Clark move to suppress the evidence resulting from a search of Clark's home that officers conducted after obtaining a search warrant.[1] Defendant Gulley also moves to disclose the identity of the government's confidential informant.[2]

For the reasons stated below, the Court **DENIES** Defendants' motions to suppress and **DENIES** Defendant Gulley's motion to disclose the identity of the government's confidential informant.

## I. Background

On July 25, 2017, police sought a search warrant for Ikasha Clark's home in Canton, Ohio.[3] Originally, police had gone to this house to effectuate an arrest warrant for a person who, seemingly, no longer resides there.[4] They knocked on the door, and Gulley, Clark's legal husband, answered.[5] When Gulley opened the door, police noticed unused ammunition on a house table.[6]

---
[1] Docs. 23, 24. The government opposes. Docs. 28, 29. Defendants reply. Docs. 33, 34. The government sur-replies. Docs. 36, 37.
[2] Doc. 26. The government opposes. Doc. 28.
[3] *See* Doc. 23-1.
[4] *Id.* at ¶ 4.
[5] *Id.*
[6] *Id.*

Case No. 5:17-cr-493
Gwin, J.

Both Clark and Gulley spoke to the police during the police's effort to execute the arrest warrant, although their conversations' content is disputed.[7] All parties agree that both Clark and Gulley told police that Clark legally owned a firearm and had a valid concealed carry permit for this firearm.[8]

Police then sought a search warrant for Clark's home.[9] They believed that they would find both guns and drugs in the home.[10]

The affidavit supporting the warrant states that Gulley has previously been convicted of several felonies and is currently on post-release control.[11] Additionally, the affidavit explains that the FBI Safe Streets Task Force had been investigating Gulley between January 2016 and July 2017, the date of the affidavit, for drug sales.[12] During that investigation, a "reliable confidential human source" saw Gulley receive several kilograms of heroin at Clark's home.[13] A "reliable confidential human source" had also seen Gulley at the residence with multiple firearms.[14] The Task Force had also "conducted multiple confidential informant buys from Jesse Gulley and his associates."[15] The Task Force investigation had uncovered that Gulley had multiple addresses, at least one of which he allegedly used as a drug storehouse.[16]

The affidavit also details the police's account of their conversations with Gulley and Clark. According to the police, Gulley informed officers that the residence belonged to Clark, and that he had only stayed over the previous night.[17] Clark told officers that multiple firearms

---

[7] *Id.* at ¶¶ 4, 6.
[8] *Id.*
[9] *Id.* at 1.
[10] *Id.*
[11] *Id.* at ¶ 3.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at ¶ 5.
[17] *Id.* at ¶ 4.

were in the residence, one of which was dropped off the previous day by a white male named "Tom."[18] Clark also said that both she and Gulley were present in the residence when Tom dropped this weapon off and gestured towards the weapon in question.[19] Clark was unsure of exactly what type of gun was dropped off at her home the previous day, although she thought that it was either "an AK 47 or SKS."[20]

Clark and Gulley challenge this characterization of their conversations with police. They say that the only information they conveyed was that the residence belonged to Clark, that Gulley stayed there the previous night, and that Clark legally possessed a firearm and a concealed carry license.[21]

Both Clark and Gulley challenge the sufficiency of the search warrant that police obtained. They argue that the majority of the information within it is either unreliable, stale, irrelevant, or falsified. They claim that without this faulty information, the only facts that police knew were that Gulley had spent the night in Clark's home along with some unspent ammunition and a gun that Clark was legally allowed to possess.

## II. Discussion

**A. Motion to Suppress**

1. *Legal Standard*

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ."[22] Probable cause for a search warrant exists if "there is a fair probability that contraband or

---

[18] *Id.* at ¶ 6.
[19] *Id.*
[20] *Id.*
[21] *See* Doc. 33 at 2-3, Doc. 34 at 2-3.
[22] U.S. Const. Amend. IV.

evidence of a crime will be found in a particular place."[23] The reviewing judicial magistrate "is simply to make a practical, common-sense decision" whether all the facts and circumstances set forth in the supporting affidavit warrant "a reasonably prudent person" to believe that a crime has occurred and the place to be searched contained evidence thereof.[24]

The magistrate reads the affidavit "not hypertechnically, but in a common sense fashion."[25] Where a magistrate judge has a "substantial basis" for concluding that a search would uncover evidence of wrongdoing, his decision will stand unless a reviewing court finds that he "arbitrarily exercised" his powers of determination.[26]

Even if a search warrant does not contain probable cause for a search, the Fourth Amendment's exclusionary rule allows the "admission of evidence seized in reasonable, good faith reliance on a search warrant that is subsequently held to be defective."[27]

2. *Search Warrant Affidavit*

The police's affidavit presented several facts that established probable cause to search Clark's home. First, officers knew that Gulley could not legally possess firearms.[28] Second, Clark informed officers that there were numerous firearms in the home, including a firearm that had been delivered to her home the previous day, at a time when Gulley was present.[29] Third, and most importantly, Clark did not know what kind of firearm was delivered the previous day.[30]

---

[23] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).
[24] *Id.*
[25] *United States v. Ware*, 338 F.3d 476, 482 (6th Cir.2003).
[26] *Gates*, 462 U.S. at 238-39; *United States v. Leon*, 468 U.S. 897, 920 (1984); *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir. 1993).
[27] *Leon*, 468 U.S. at 897. *See also United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004) (finding that the good faith exception applied because a sufficient nexus existed between the searched residence and illegal activity for police to reasonably believe a warrant valid); *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (upholding a search pursuant to a warrant where the affidavit described the residence, the items sought, and the defendant's counterfeiting scheme, but connected the place to the illegal activity only by stating that the residence "was available" to the defendant).
[28] Doc. 23-1 at ¶ 3.
[29] *Id.* at ¶¶ 4, 6.
[30] *Id.* at ¶ 6.

When put together, these three facts gave officers—and the approving magistrate—probable cause to believe that the firearm delivered the previous day, and perhaps other firearms within the home, belonged to Gulley.

Because Clark was unaware of the type of gun that had been dropped off the previous day, police could reasonably believe that firearm, and perhaps the other guns and ammunition within the house, did not belong to her. Given that Gulley was both present for the previous day's delivery and that there are no indications that any people other than Clark and Gulley were in the home, police could infer that Gulley was the actual owner of at least one firearm in the home.

Gulley and Clark have argued that the conversation between themselves and the officers did not occur as described in the affidavit.[31] They have said that they only informed officers that Clark legally possessed firearms and that she had a valid concealed carry permit.[32]

Obviously, if their allegations were true, the Court's analysis of probable cause would be very different. Neither Clark nor Gulley, however, has put forward any evidence supporting their assertions. The government, meanwhile, has provided FBI agents' contemporaneous reports of their conversations with Clark and Gulley, which support the officer-affiant's characterization of those conversations.[33]

The Court does not need to address Clark's and Gulley's other arguments regarding the informants described within the affidavit or the descriptions of Gulley's other allegedly illegal activities. Even totally discounting that information, the facts described above support a finding of probable cause to search Clark's home. Further, the Court finds that even if the facts

---

[31] *See* Doc. 33 at 2-3, Doc. 34 at 2-3.
[32] *Id.*
[33] *See generally* Doc. 36-1; Doc. 36-2.

described above do not establish probable cause, officers could objectively rely on the warrant in good faith, and so suppression is not warranted in this instance.[34]

The Court therefore **DENIES** Clark's and Gulley's motions to suppress.

**B. Motion to Disclose the Identity of the Government's Confidential Informant**

Gulley also seeks disclosure of the identity of the government's confidential informant.[35] This informant allegedly saw Gulley with guns and drugs at Clark's house on some previous occasion. The government represents to the Court that it does not intend to call this informant as a witness at trial or at any suppression hearing. And, as explained above, the Court's probable cause determination does not depend on this informant's information. Given this, it is unclear how this informant's testimony might enable Gulley to show that he did not possess any of the guns found in Clark's house on the date of his arrest.

For these reasons, the Court **DENIES** Gulley's motion to disclose the identity of the government's informant at this time. If the government attempts to use this informant's testimony in some way, or the necessity of the informant's testimony becomes clear, Gulley may renew his motion.

### III. Conclusion

For these reasons, the Court **DENIES** Clark's and Gulley's motions to suppress. The Court also **DENIES** Gulley's motion to disclose the identity of the government's informant.

IT IS SO ORDERED.

Dated: February 5, 2018       s/ *James S. Gwin*
                                                                         JAMES S. GWIN
                                                                         UNITED STATES DISTRICT JUDGE

---

[34] *See Leon*, 468 U.S. at 897.
[35] *See* Doc. 26.