UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 5:17-cr-00493-JG-1 |
| Plaintiff, | : | ORDER |
| vs. | : | [Resolving Doc. 122; Doc. 131; Doc. 133; Doc. 135; Doc. 137; Doc. 138; Doc. 139; Doc. 140; Doc. 142] |
| JESSE GULLEY, | : | |
| Defendant. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* Defendant Jesse Gulley moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] He also brings other motions. The Government opposes Gulley's request.[2]

For the reasons stated below, the Court **DENIES** Defendant's 28 U.S.C. § 2255 motion. The Court **DENIES** Defendant's other motions, with the exception that the Court **GRANTS** Defendant's motion to replace a page in another motion and his motion to withdraw a motion to dismiss.

I. Background

In March 2018, Defendant Gulley pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[3] This Court sentenced Gulley to 48 months' imprisonment followed by 3 years' supervised release.[4] The Sixth Circuit

---

[1] Doc. 122.
[2] Doc. 125.
[3] Doc. 64 at 2.
[4] Doc. 90 at 2–3.

Case No. 5:17-cr-00493-JG-1
Gwin, J.

upheld Gulley's conviction on appeal.[5] Defendant Gulley is scheduled to be released from prison on July 24, 2021.[6]

On July 25, 2017, members of the Northern Ohio Violent Fugitive Task Force went to Defendant Gulley's wife's, Co-Defendant Ikasha Clark's, Canton, Ohio house. The task force officers possessed an arrest warrant for someone who had been associated with that address.[7] Instead of the person the task force officers sought, Clark opened the door. Defendant Gulley also came to the door and spoke to the officers.[8]

While speaking with Gulley and Clark, Officer Jason Guag noticed rifle ammunition in a bag on the floor by the door.[9] Defendant Gulley maintains that Guag then entered the house without permission.[10] The officers asked about the ammunition and whether there were other guns in the house. Clark said that she had several guns, including a rifle, and a concealed carry permit. But Clark was unsure about the number and type of guns she owned, where she had bought them, and whether all the guns in the house belonged to her.[11]

The officers asked Defendant Gulley if he knew about the guns in the house. He said that he knew they were there but that the guns were not his.[12]

Based upon this, the officers sought and received a search warrant for the location. Once the officers obtained a search warrant, they found heroin and other drug-related items,

---

[5] Doc. 118; Doc. 125 at 2. *See also United States v. Gulley*, 780 Fed. Appx. 275 (6th Cir. 2019).
[6] Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/mobile/find_inmate/ (last visited June 3, 2021).
[7] Doc. 125 at 3–4.
[8] *Id*. at 4. Defendant maintains that he opened the door to the officers. Doc. 122-2 at 1; Doc. 122-6 at 3.
[9] Doc. 125 at 3–4.
[10] Doc. 122-2 at 2.
[11] Doc. 125 at 4–5.
[12] *Id.*

-2-

Case No. 5:17-cr-00493-JG-1
Gwin, J.

as well as nine firearms.[13]

## II. Discussion

### A. Legal Standard

A federal prisoner may collaterally attack their conviction or sentence by filing a § 2255 motion to vacate, set aside, or correct their sentence.  A § 2255 motion must allege: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."[14]  A § 2255 movant must establish their allegations by a preponderance of the evidence.[15]

*Pro se* pleadings, such as Defendant's habeas petition, are liberally construed and held to less stringent standards than counsel-drafted pleadings.[16]  Even still, Defendant's motion is difficult to follow.

### B. Defendant's Ineffective Assistance of Counsel Claims

Defendant Gulley makes ineffective assistance of counsel claims against both of the attorneys who represented him.  Gulley's first counsel, Fernando Mack, filed a motion to suppress challenging the probable cause basis of the search warrant used to search Clark's house.[17]  The Court denied the motion to suppress.[18]

Gulley then filed a motion to appoint new counsel, which the Court granted.[19]

---

[13] *Id.* at 5.
[14] *Pough v. U.S.*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. U.S.*, 334 F.3d 491, 496–97 (6th Cir. 2003)).
[15] *Pough*, 442 F.3d at 964.
[16] *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam).
[17] Doc. 24; Doc. 122-6 at 4; Doc. 125 at 1.
[18] Doc. 39.
[19] Doc. 47; Doc. 56; Doc. 125 at 2.

Case No. 5:17-cr-00493-JG-1
Gwin, J.

Defendant's new counsel, Carlos Warner, sought leave to file a second, untimely motion to suppress challenging the officers alleged warrantless entry into Clark's house.[20] The Court denied Gulley's request.[21]

To establish ineffective assistance of counsel, Defendant Gulley must meet the *Strickland* standard: He must show (1) that his counsel's performance was deficient, and (2) that he was prejudiced by their deficiency.[22]

For the first prong, Counsel's performance must fall "below an objective standard of reasonableness."[23] Courts use a highly deferential standard to assess counsel's performance.[24] Courts presume a "wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[25] A *Strickland* analysis should not be used to second-guess counsel's decisions and strategy just because it was unsuccessful.[26]

For the second prong, a Defendant must establish that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[27] A reasonable probability is "probability sufficient to undermine confidence in the outcome."[28]

---

[20] Doc. 60; Doc. 60-1; Doc. 125 at 2.
[21] Doc. 61.
[22] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[23] *Id.* at 688.
[24] *Id.* at 689.
[25] *Id.* (citation omitted).
[26] *White v. McAninch*, 235 F.3d 988, 995 (6th Cir. 2000).
[27] *Strickland*, 466 U.S. at 694.
[28] *Id.*

-4-

Case No. 5:17-cr-00493-JG-1
Gwin, J.

### a. Grounds One and Two: Defendant's Ineffective Assistance of Counsel Claims Against Attorney Mack

First, Defendant Gulley claims that Attorney Mack provided ineffective assistance of counsel because he sought a suppression motion based on an invalid search warrant theory rather than an invalid entry theory. According to Gulley, he instructed his first attorney to argue that the police's initial entry into Clark's home was illegal.[29] Instead, Attorney Mack chose to challenge the search warrant's validity.[30]

Gulley's ineffective assistance of counsel claim fails because Attorney Mack's representation was not deficient. Attorney Mack made a strategic decision to pursue a motion to suppress by challenging probable cause, rather than Officer Guag's alleged warrantless entry. The Court cannot say this choice was objectively unreasonable. Moreover, the fact that the suppression motion was unsuccessful does not mean that Attorney Mack's representation was ineffective.[31]

Even if Attorney Mack's performance had been shown to be deficient, Defendant Gulley has not established that he was prejudiced as a result. Defendant Gulley makes a conclusory argument that his "criminal proceedings would have ended differently had counsel sought" a motion to suppress based on illegal entry.[32]

The Court disagrees. It is not clear that the Court would have credited Defendant's

---

[29] Gulley claims that Officer Jason Guag stepped into Clark's house to question Clark and Gulley about ammunition he saw inside the house. Defendant Gulley also supplies an affidavit from Clark, as well as his own affidavit, attesting to these alleged facts. Doc. 122-6 at 3; Doc. 122-1 at 1; Doc. 122-2 at 2. Officer Guag's report states that Clark gave him permission to enter. Doc. 122-4 at 2.

[30] Doc. 108 at 6; Doc. 122-6 at 8–10.

[31] See *Moreland v. Robinson*, 813 F.3d 315, 328 (6th Cir. 2016) ("When evaluating defense counsel's performance under *Strickland*, [courts] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act of omission of counsel was unreasonable in the harsh light of hindsight.") (internal quotation marks omitted).

[32] Doc. 122-6 at 7–8.

Case No. 5:17-cr-00493-JG-1
Gwin, J.

version of events, found Defendant to have sufficiently shown that he was an overnight guest with a Fourth Amendment interest at Clark's house,[33] and granted a motion to suppress based on warrantless entry.

Also, the United States argues that the officers had a search warrant for the location[34] and say that the firearm and ammunition were visible when the door opened and before entry into the house.[35]

Next, Defendant Gulley argues that Attorney Mack provided ineffective assistance of counsel because Attorney Mack (1) did not sufficiently show that the affidavit supporting the search warrant allegedly omitted critical facts, and (2) did not request a *Franks*[36] hearing.[37] Defendant suggests that Attorney Mack should have provided more evidence at a *Franks* hearing to show that the officers' concurrent reports were incorrect and, therefore, insufficient to establish probable cause.[38]

Attorney Mack did not request a *Franks* hearing[39] but, as the Government points out, the Court said it would not have granted a request for one.[40]  Further, Defendant is not clear about what evidence Attorney Mack could have included that would have more effectively supported Defendant's suppression motion or warranted a *Franks* hearing.

---

[33] Defendant Gulley cites *Minnesota v. Olson*, where the Supreme Court held that "overnight guests" have a reasonable expectation of privacy in their host's home.  Doc. 122-6 at 9 (citing *Minnesota v. Olson*, 495 U.S. 91, 98 (1990)).
[34] Doc. 125 at 5, 9.
[35] *Id*. at 4.
[36] *Franks v. Delaware* provides that a defendant has a Fourth Amendment right to a hearing "where the defendant makes a substantial preliminary showing" that the warrant affidavit included the affiant's knowing or intentional false statement or a statement made with reckless disregard for the truth, and where "the allegedly false statement [wa]s necessary to the finding of probable cause."  438 U.S. 154, 155–156 (1978).
[37] Doc. 122-6 at 11.
[38] *Id*. at 12.
[39] Doc. 38.
[40] Doc. 108; Doc. 125 at 9.

Case No. 5:17-cr-00493-JG-1
Gwin, J.

Attorney Mack's decision to not seek a *Franks* hearing was trial strategy.[41]  Defendant does not show that his counsel fell below an objective standard of reasonableness.

### b. Ground Four: Defendant's Ineffective Assistance of Counsel Claims Against Attorney Warner

Defendant Gulley contends that he was denied effective assistance of counsel when his second lawyer, Carlos Warner, "failed to investigate" and "suppressed evidence."[42]

Defendant argues that Attorney Warner "withheld" Document 50 from Defendant and failed to properly investigate Defendant's claim that he was actually innocent.[43] Defendant suggests that Attorney Warner withheld Document 50 to induce Defendant's guilty plea.[44]  Defendant also alleges that Attorney Warner refused to provide Gulley with the FBI's "302" reports and other relevant documents.[45]

Gulley does not show that Warner purposefully hid Document 50 or any other documents.  Even still, Document 50 and the FBI 302 reports do not prove Defendant's innocence.[46]  More importantly, they do not demonstrate that Attorney Warner's performance was deficient.

---

[41] *See* Doc. 38.

[42] Doc. 122-6 at 21.

[43] *Id.* at 22.  Defendant took a video that allegedly shows him talking to Officer Guag without any weapons nearby.  Defendant says that this shows he was innocent of the charge of possessing firearms. *Id.* However, constructive possession does not require Defendant to be holding or in the sightline of any firearms. Also, Defendant pled guilty to the possession charge.

[44] *Id.*

[45] The Government attached two FBI 302 reports to its Sur-Reply in opposition to Gulley's first motion to suppress.  Doc. 36; Doc. 36-1; Doc. 36-2.

[46] Doc. 50 includes a notice document informing the Court that the Canton Police Department suspended Officer Jason Guag and that "state law enforcement officials" were "conducting a criminal investigation" unrelated to the events in Defendant Gulley's case.  Guag had been working with the Northern Ohio Violent Fugitive Task Force to service several arrest warrants, one of which led them to Clark's house. Doc. 50 at 2–3.  Attached to the notice document is Guag's written report relating the events that lead to Gulley's indictment.  Guag reported that Defendant Gulley said that none of the guns in the house were his. Doc. 50-1.  Defendant's reported statements do not prove that he was innocent.

Case No. 5:17-cr-00493-JG-1
Gwin, J.

Next, Gulley explains that Warner advised him to plead.  Gulley felt that he could win at trial if his wife and Officer Guag testified for him.  Gulley says that Warner disagreed with this strategy and even, on one phone call, hung up on Gulley in frustration.[47]

Gulley says he decided to plead because Warner "denied [him] . . . any relevant documents and those he needed subpoenaed."  He felt he could not fight his case otherwise.[48]  But, Defendant also says that Attorney Warner sent the documents Gulley requested.[49]  It is not clear if Defendant means that he did not receive the documents until after he pled guilty on March 9, 2018.[50]

Defendant does not show that Attorney Warner provided him with illegal or incorrect advice.[51]  Moreover, Courts are very deferential to counsel's strategic decisions, including the decision about whether to call or not call witnesses at a potential trial.[52]  It makes sense that Attorney Warner did not want to call Office Guag and Co-Defendant Clark to testify because it is not clear that their presumably conflicting testimonies would have furthered Gulley's case.  Defendant's motion suggests that Warner explained his strategy to Gulley and provided the documents Gulley requested.[53]

---

[47] Doc. 122-6 at 22–23.
[48] *Id*. at 24.
[49] *Id*.
[50] Doc. 63.
[51] *See Missouri v. Frye*, 566 U.S. 134, 140–142 (2012).
[52] *Strickland,* 466 U.S. at 689.
[53] Doc. 122-6 at 23 ("Mr. Gulley told Counsel he wanted to exercise his right to go to trial and that he would only need two people subpoenaed, he would need his wife Ikasha Clark the home owner and TFO Jason Guag.[ ]Counsel said he don't think his wife would come to testify for him and he couldn't find TFO Jason Guag and even if he did find him he would plead the 5th if he testified. Counsel advise Mr. Gulley that it would be a mistake to go to trial because he had a better chance at taking the plea and winning on appeal…Mr. Gulley told Counsel the he could beat it that he was innocent of the charges and that his witness []Ikasha Clark would testify to the fact.  Counsel got frustrated and hung up the phone on defendant on a conference call….").

Case No. 5:17-cr-00493-JG-1
Gwin, J.

Finally, Defendant argues that his plea was not made knowingly or voluntarily.[54] But, Defendant's colloquy with the Court details otherwise. The Court discussed Defendant's plea decision with him.[55]

Defendant has not shown that Attorney Warner provided ineffective assistance or that he was prejudiced by Warner's deficient counsel.

### C. Ground Three: Prosecutorial Misconduct

In his third ground, Defendant Gulley alleges prosecutorial misconduct. For habeas claims, prosecutorial misconduct rises to the level of a constitutional violation when the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[56]

Gulley says the Government "suppressed impeachable evidence known to be perjured, committed fraud on the Court, and[] misrepresented evidence in pre-trial litigation."[57]

In particular, Defendant Gulley argues that the affidavit supporting the search warrant was misleading and incorrect. He also says that the search warrant lacked a probable cause basis.[58] This is because Defendant believes a report, possibly Officer Guag's, was perjured,

---

[54] Doc. 122-6 at 26.
[55] Doc. 110 at 4–5.
[56] *Sowell v. Collins*, 557 F. Supp. 2d 843, 911 (S.D. Ohio 2008) (citing *Broom v. Mitchell,* 441 F.3d 392, 412 (6th Cir.2006)).
[57] Doc. 122-6 at 13.
[58] Doc. 122-6 at 16–19. In making his argument, Gulley also contends that Clark's new affidavit stating facts that are different than those contained in the officers' reports constitutes new evidence for the Court to consider. *Id.* at 20. This is not the case. In fact, Defendant states without explaining that "[t]he evidence was always there[,] it was suppressed by the district attorney." *Id.* at 20. Defendant's competing affidavit does not show that the affidavit underlying the search warrant was misleading or incorrect.

-9-

Case No. 5:17-cr-00493-JG-1
Gwin, J.

but Gulley does not provide evidence or a clear explanation.[59] He claims that the Government sealed and withheld Officer Guag's report and/or information about Officer Guag's unrelated suspension and investigation.[60]

First, the Government explains—and the record shows—that it did not suppress or conceal Officer Guag's report or information about his investigation.[61]

Second, Defendant Gulley maintains that the Government's search warrant was not based on probable cause and contained misleading or incorrect information.[62] In Defendant's § 2255 motion, as well as his other motions discussed below, he argues that there are variations in language between the different officers' reports.[63] Defendant argues that this means the reports were misleading or critically faulty and the Government should not have been permitted to build its prosecution on the reports.[64]

This evidence is not sufficient to show that the Government acted fraudulently or hid information from Defendant or the Court.[65] It does not show a trial so "infected with unfairness" that Gulley was denied his due process rights.

Lastly, Defendant Gulley argues that the Government should not have indicted him because his wife said the guns in the house belonged to her. Gulley contends that there was "no crime" to charge.[66] The Government, in turn, points out that Gulley stated in his plea

---

[59] Doc. 122-6 at 20.
[60] *Id.* at 20; Doc. 128 at 9.
[61] Doc. 125 at 12–13; *see also* Doc. 50.
[62] Doc. 122-6 at 14.
[63] *See, e.g., id.* at 17–18; Doc. 128 at 4. For example, Defendant highlights that Officer Guag's report said that Clark said she had recently bought a rifle, while another report said the rifle had been dropped off by someone else.
[64] Doc. 122-6 at 14, 16–19.
[65] *See United States v. Woodward*, 2007 WL 2008687, at *8 (S.D.Ohio,2007).
[66] Doc. 122-6 at 13–14, 20.

-10-

Case No. 5:17-cr-00493-JG-1
Gwin, J.

agreement that he possessed the guns.[67]

Clark's statement that the guns were hers, especially given that she was unsure how many or what kind of guns she owned, did not preclude Gulley's possession charge or amount to prosecutorial misconduct. Rather, the Government would have had to prove at trial that Gulley possessed the guns, not Clark.

Defendant's prosecutorial misconduct claims do not succeed.

### III. Defendant's Other Motions

In addition to his habeas petition, Defendant has filed eight other motions related to his case, including four motions to dismiss. Defendant's motions are difficult to follow and appear to reiterate many of the arguments in Gulley's § 2255 motion.

Defendant Gulley sought to withdraw one motion to dismiss.[68] The Court grants Defendant's withdrawal.

In Defendant's motion to dismiss filed September 11, 2020, Defendant argues that there was no arrest warrant issued for him or Co-Defendant Clark. Further, Defendant denies that there was a criminal complaint issued against him.[69] Defendant cannot make claims on Clark's behalf. Further, Defendant's allegation is incorrect. Defendant was indicted and Judge Baughman issued an arrest warrant for him on December 5, 2017.[70] The Court denies this motion.

Defendant filed another motion to dismiss on January 11, 2021. Defendant's filed

---

[67] Doc. 125 at 13–14 (quoting Doc. 64).
[68] Doc. 133; Doc. 135.
[69] Doc. 131 at 2, 4.
[70] Doc. 1; Doc. 2; Doc. 2-1.

-11-

Case No. 5:17-cr-00493-JG-1
Gwin, J.

Document 137 appears to be a replacement cover page for Document 138.[71] The Court addresses both documents together. Even viewing Defendant's *pro se* motion liberally, it is difficult to interpret Defendant's arguments. Defendant seeks to "set aside fraudulently begotten judgments."[72] However, similar to his § 2255 motion, Defendant's arguments seem to focus on the fact that he believes the officers' reports were untruthful and that they lacked probable cause to search Clark's house.[73]

Defendant pled guilty and challenged his plea on appeal.[74] This motion to dismiss appears to be a restatement of Defendant's § 2255 petition.[75] The Court grants Defendant's motion to exchange the first page of Document 138 with Document 137 but denies Defendant's second motion to dismiss.

Defendant next seeks to withdraw his guilty plea, citing many of his arguments from his § 2255 motion.[76] It is too late for Defendant to withdraw his plea.[77] The Court denies this motion.

Defendant also seeks to expand the record and asks the Court to disclose the Grand Jury proceedings.[78] Defendant does not argue that anything that happened before the Grand

---

[71] *See* Doc. 137.
[72] Doc. 138 at 6.
[73] Doc. 138 at 2–3.
[74] Doc. 64; Doc. 118.
[75] *See also* Doc. 141 at 18–20.
[76] Doc. 139.
[77] Fed. R. Crim. Pro. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack."); *see also* 141 at 20–22.
[78] Doc. 140; Doc. 141 at 22. To the extent Defendant argues in his motion to disclose the grand jury proceedings and in his other filings that he should not have been charged with or could not have been found guilty of possession because he was not physically holding a firearm when the officers came to the door, his argument is not successful. The Court watched Defendant's provided video. Doc. 122-3. Constructive possession "exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others."

-12-

Case No. 5:17-cr-00493-JG-1
Gwin, J.

Jury should be disclosed.[79] The Court denies Defendant's motion.

Finally, Defendant Gulley seeks to set aside the judgment in his case.[80] This appears to be a restatement of many of the arguments in Defendant's § 2255 motion. The Court denies Defendant's motion.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's 28 U.S.C. § 2255 motion. The Court **DENIES** Defendant's other motions, with the exception that the Court **GRANTS** Defendant's motion to replace a page in another motion and his motion to withdraw a motion to dismiss.

IT IS SO ORDERED.

Dated: June 14, 2021     *s/     James S. Gwin*
     JAMES S. GWIN
     UNITED STATES DISTRICT JUDGE

---

*United States v. Crumpton*, 824 F.3d 593, 609 (6th Cir. 2016) (quoting *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998)).

[79] Rule 6(e)(3)(E)(ii) ("The court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.").

[80] Doc. 142.